**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**BENEDICT ZUCCARELL,**

    **Plaintiff,**

**vs.**                                           **CASE NO. 1:08CV162-MP/AK**

**MICHAEL J. ASTRUE,
Commissioner of Social Security**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.**     **PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on May 23, 2005, alleging a disability onset date of December 1, 2004, because of neck pain, arm pain, arthritis in his left knee, epilepsy and asthma. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on July 30, 2007, and entered an

unfavorable decision on November 1, 2007. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

**B.     FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had severe impairments: neck pain, history of C5 fracture, seizures and asthma, but found that he did not meet the listing requirements for Disorders of the Spine, Epilepsy or Asthma. Further, the ALJ found Plaintiff capable of performing a full range of sedentary work . The ALJ found that Plaintiff's reported daily activities were inconsistent with the severity of limitations he reports. He takes care of a 3 year old by himself, he accompanies his father during his work day riding around preparing estimates for restaurant remodels, he rode a bus from Ohio to Florida to attend the hearing, and takes care of all his personal needs, cooking, cleaning, laundry, despite his allegations of hand restrictions and pain. In reaching this conclusion, the ALJ relies on the findings of Dr. Chodosh. His syrinx is conservatively managed and his seizures are controlled. He cannot perform his past relevant work which was light to heavy work, but he is a younger individual (43 years old at the time of the hearing) with two years of college, and under the Medical-Vocational guidelines there are a number of jobs which he could perform at the sedentary level.

**C.     ISSUES PRESENTED**

Plaintiff argues that the ALJ erred by not articulating why he did not credit the opinion of Dr. Chodosh with appropriate weight which would have limited his manipulative skills and required a vocational expert; there were no findings of fact as to how many hours Plaintiff could stand or walk in an eight hour day or the extent to which

**No. 1:08CV162-MP/AK**

he could perform upper extremity functions; and the ALJ erred in not assessing the affect of Plaintiff's neurogenic bladder and his syringohydromyelia condition.

The government responds that the ALJ's functional assessment and Dr. Chodosh' opinion were consistent in that sedentary work fit within Dr. Chodosh' limitations, who stated that Plaintiff was restricted to occasional handling of moderately heavy and moderately sized objects. Hand manipulation limitations would not preclude sedentary work unless his impairments affected his ability to handle small objects.

Further, the ALJ is not required to investigate a claim not presented at the time of the application for benefits and Plaintiff did not allege disability based on neurogenic bladder and syringohydromyelia. Also, Plaintiff worked since his bladder condition and where an individual has worked for years with an impairment it is not considered disabling.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.  STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397,

**No. 1:08CV162-MP/AK**

1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

     A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To

**No. 1:08CV162-MP/AK**

qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within

**No. 1:08CV162-MP/AK**

the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E.     **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff relates that in 1984 he had a diving accident with a "burst fracture" at C5 from which he was completely paralyzed for a year and a half. (R. 147). He returned to a roofing job with good upper extremity function until approximately January 2005, when he began experiencing pain, weakness and numbness in left neck and arm. (R. 147). MRI of June 21, 2005 shows "small area of syringohydromyelia" at C5. (R. 146-147, 153, 281-282). EMG studies of his upper extremities in July 2005 revealed "subtle changes" with "normal motor function and "no acute radiculopathy of focal nerve entrapment." (R. 339-341).

Dr. McMillan, his primary treating physician at Shands, referred him to Dr. Jacob for a neurology consult, and surgery was recommended, but only after Plaintiff quit smoking. (R. 327-328). An orthopedic consult also recommended surgery by Dr. Jacob. (R. 323-325). [There are no records from Dr. Jacob except two notes indicating that Plaintiff must quit smoking before surgery would be done].

Consultative examination by Dr. Chodosh on August 30, 2005, revealed no atrophy with motor function slightly decreased in left upper extremity and left hand (4/5), but the assessment was "difficult because of relatively poor effort." (R. 168). Manual dexterity "is difficult to assess (able to write; remove and replace the screw cap on a

small bottle with slight difficulty)." (R. 168). The final comment was that Plaintiff "is able to walk and stand to a moderate extent, but not extensively. He is able to sit in a normal fashion... He is able to handle objects of moderate size and weight at least occasionally." (R. 169).

Dr. Murphy began treating him in August 2005 for neck and arm pain and found him to have weakness in his extremities, significant to his left upper extremity. (R. 184-192). She treated him for pain in this area (left upper neck and shoulder) with lidocaine injections. (R. 186). Surgical intervention (cervical fusion) was being considered and he had appointments with a neurosurgeon (Dr. Jacob) in October. (R. 188).

X-rays taken in December 2005 relative to a fall show no appreciable change in the cervical spine from the MRI of 6/19/05. (R. 284).

Treatment notes from January 17, 2007, show neck pain from a fall, with no complaints of extremity weakness. (R. 261). Radiology reports evidence of old C5 fracture, but nothing else. (R. 262, 264, 301-308).

Treatment for pain in February, March, April and May 2007, was complicated by a positive drug screen for non-prescription medication and non-compliance with Dilantin. (R. 286-300).

Seizure activity appears related to non-compliance with Dilantin and alcohol abuse(2002). (R. 265).

Medical records submitted to the Appeals Council show that he did have a cervical fusion on February 5, 2008, resulting in "excellent strength in his bilateral upper

**No. 1:08CV162-MP/AK**

extremities," and improvement in his dexterity function a few days after surgery. His confusing complaints of pain and numbness were troublesome and Dr. Cohen expressed concern with his compliance in taking antibiotics and follow up care in general. (R. 456-475).

F.     **SUMMARY OF THE ADMINISTRATIVE HEARING (held July 30, 2007)**

Plaintiff appeared with counsel. (R. 479). He drew disability following the diving accident in 1984, but was terminated in 1987 or 1988 when he went to prison. (R. 479). He moved to Ohio in January 2007 and lives there with his girlfriend and 3 year old son. (R. 484). He took a bus from Ohio to Florida for the hearing. (R. 519-520). His drivers license has been suspended for life because of 4 DUI's. (R. 489). He said he smoked pot to help with the muscle spasms, but he no longer needs to drink or smoke now that he is on medication. (R. 491-493). He can do "little" things with his left hand, but cannot lift anything heavy with it. (R. 496). His girlfriend had to quit her job to help him take care of his 3 year old son because he cannot lift him or change his diapers. (R. 497-498). He is able to dress himself, bathe himself, get his socks on, and used to do light housekeeping taking care of his son. (R. 502). He must take pain pills, but when he does his pain is more the level of a dull toothache, about a 3 or 4 level. (R. 505, 506).

Plaintiff wears a foot brace because he suffers from foot drop and can only stand for about 15 or 20 minutes at a time. (R. 510). He wears a wrist brace after a truck hit him and his wrist was not set correctly. (R. 511).

**No. 1:08CV162-MP/AK**

He has to catheterize himself because of urinary problems related to his neck injury which takes about 10 to 15 minutes at a time twice a day. (R. 518-519).

The hypothetical given to the vocational expert was of a sedentary exertional level with restrictions in overhead reaching with his left upper extremity, no hazards, and limited to activities requiring bilateral gross manual dexterity and fine manipulation with his right hand. (R. 524). The expert identified a number of jobs available to him. (R. 525-526). Plaintiff's attorney added the restriction of laying down 3 to 4 hours a day, which eliminated all jobs, and having to leave the job task for 15 minutes every hour, which also eliminated all jobs. (R. 526-527)

## G.  DISCUSSION

### a)  Dr. Chodosh' opinion

Plaintiff argues that Dr. Chodosh was a consultative examiner (DOE August 30, 2005), who found Plaintiff to have upper extremity limitations which were confirmed by Drs. Murphy and McMillan. With such limitations, Plaintiff argues that he cannot perform a full range of sedentary work and a vocational expert should have been called to testify.

Dr. Chodosh, as a one time consultative examiner, is not entitled to the same weight as a treating physician's opinion. See Wilson v. Heckler, 734 F.2d 513, 516 (11th Cir. 1984); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). A treating physician is defined as a "medical source who provides [the claimant] or has provided [the claimant]

with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 CFR §404.1502.

Drs. Murphy and McMillan were, however, treating physicians as they had an ongoing treatment relationship with Plaintiff. Plaintiff argues that all three doctors found him to have significant upper extremity limitations that would preclude a full range of sedentary work and that the ALJ erred in rejecting their opinions. Actually, an ALJ is not required to adopt even the opinions of treating physicians if there is good cause to reject them. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

**No. 1:08CV162-MP/AK**

In this case, however, Plaintiff has misrepresented the opinions of Dr. Chodosh, McMillan and Murphy, and the ALJ did not reject their opinions at all. While all three physicians noted left upper extremity weakness, Dr. Chodosh found no atrophy and only slightly decreased motor function. Plaintiff was able to screw on a small bottle cap and write. A more specific assessment was hampered by "poor effort." Dr. McMillan ordered EMG studies which found only subtle nerve changes and normal motor function. Dr. Murphy noted the weakness as well, but did not conduct objective tests to document the degree of weakness. Even Plaintiff himself stated at the hearing that he could do small things, it was lifting heavier objects with his left hand that caused him trouble.

Thus, the ALJ's findings are in conjunction with the assessments of Plaintiff's treating physicians, as well as the findings of Dr. Chodosh, and there is no error to be found since the ALJ did not reject any of these opinions.

    b)    <u>Residual Functional Capacity Assessment</u>

Plaintiff alleges that the ALJ failed to follow regulations and make factual findings as to how many hours in a day he can walk or stand and instead made non-specific findings that he could perform sedentary work. Further, Plaintiff argues that sedentary work at a full range requires the use of both hands and any significant limitation of the upper extremities would preclude use of the Medical Vocational Guidelines and require a vocational expert to assess.

**No. 1:08CV162-MP/AK**

An individual's ability to work must be assessed in light of all his impairments and any related symptoms, including pain, which is referred to as their residual functional capacity (RFC). 20 CFR §404.1545. A person's residual functional capacity is based on the *most* they can do despite their limitations. *Id.* In making this determination all of person's impairments are considered, even those which are not considered severe, and the entire record is to be considered, even non-medical information. *Id.* The claimant is responsible for providing this evidence. *Id.* This assessment is first used at Step Four of the evaluation process. If the ALJ determines that a claimant cannot do his past relevant work, then the same RFC will be used at Step Five in conjunction with the Guidelines to decide if the person can make an adjustment to other work in the national economy.

The ALJ in the present case relied upon the functional assessments of Dr. Chodosh and a state agency physician, who specifically referenced Dr. Chodosh' exam results (R. 176), to find that Plaintiff could perform light to sedentary work with restrictions to overhead reaching. (R. 175-182). The ALJ's findings were consistent and supported by both reports and there are no other contrary medical records or any other medical source assessments which support Plaintiff's allegations of severe and significant left upper extremity limitations.

c) <u>Failure to consider all impairments</u>

Plaintiff complains that the ALJ did not consider the severity of Plaintiff's need to self-catheterize or his syringohydromelia and the impact these conditions had on his

**No. 1:08CV162-MP/AK**

ability to function in the work place. Plaintiff did not raise these issues in his applications for disability, and as such, the ALJ is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability. Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996). The impairments listed on his disability applications are neck, left arm, arthritis in left knee, epilepsy and asthma. (See R. 83). At the hearing, he complained of weakness and pain which began when he broke his neck in 1984. (R. 494). Although he discussed having to self-catheterize, he stated that he spent 10 to 15 minutes twice a day doing this procedure, but he does not claim that it is disabling. Further, Dr. McMillan noted the syringohydromyelia on MRI, but made no separate functional assessment based on this condition. The material attached to Plaintiff's memorandum indicates that the condition often develops after a spinal cord injury and produces pain and weakness in the legs and hands. Thus, even though the ALJ may not have assessed the condition as syringohydromyelia, he did consider the functional limitations of pain and weakness, whatever the cause, and the affect they had on his ability to work.

    d)    <u>Medical-Vocational Guidelines v. Expert</u>

Plaintiff contends that it was error for the ALJ to rely on the guidelines to determine that significant numbers of jobs are available to him because his left upper extremity limitations preclude him from working a full range of sedentary jobs. However, there are no medical records to support this contention. Defendant references SSR 96-9p, which states that a significant limitation is only when both hands are affected and

**No. 1:08CV162-MP/AK**

cannot handle and work with small object. Again, Plaintiff himself stated at the hearing that he had some difficulty using his left hand, but he was right hand dominate and his primary problem was with lifting heavy objects with his left hand. There is nothing in the record to support Plaintiff's purported non-exertional limitations such as the need for a sit/stand option or to lay down 3 or 4 hours a day or take 15 minute breaks every hour. Plaintiff himself represented at the hearing that as long as he was taking his pain medication his pain was on the level of a dull toothache, and he had just ridden on a bus from Ohio to Florida and spent his free time riding around with his father, which does not support an allegation that he has trouble sitting for long periods of time. Thus, the ALJ could properly base his decision on the Guidelines, although a vocational expert was present at the hearing and responded to a hypothetical, which included the limitations found severe by the ALJ, with a number of jobs which Plaintiff could perform.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this __4th__ day of November, 2009.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**No. 1:08CV162-MP/AK**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:08CV162-MP/AK**